UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., And TEXACO INC., And TEXACO DOWNSTREAM LLC, Plaintiffs, vs. THE UNITED STATES, Defendant. | ) | No. 03-288C (Chief Judge Damich) |

**SECOND AMENDED COMPLAINT**

For their Second Amended Complaint, Plaintiffs, Chevron U.S.A. Inc., Texaco Inc., and Texaco Downstream LLC allege as follows:

**THE PARTIES**

1. Plaintiff Chevron U.S.A. Inc., is a Pennsylvania company with its principal place of business in San Ramon, California. During part of the relevant period, Chevron U.S.A. Inc. operated through and under the name of one of its divisions, Chevron Products Company. Chevron U.S.A. Inc. and Chevron Products Company hereafter are referred to collectively as "Chevron."

2. Plaintiff Texaco Inc. is a Delaware company with its principal place of business in San Ramon, California.

3. Plaintiff Texaco Downstream LLC, a Delaware limited liability company with its principal place of business in San Ramon, California, is the successor to a wholly-owned subsidiary of Texaco Inc., through which Texaco Inc. operated with respect to some of the

relevant transactions. Texaco Inc. and Texaco Downstream LLC hereafter are referred to collectively as "Texaco."

4. Plaintiffs, Chevron U.S.A. Inc., Texaco Inc., and Texaco Downstream LLC, are part of the ChevronTexaco Corporation family of companies and hereafter are referred to collectively as "ChevronTexaco," except where individually identified.

5. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is a field activity of the Defense Logistics Agency ("DLA"), which is a component of the Department of Defense. DESC previously was known as the Defense Fuel Supply Center.

## JURISDICTION

6. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002), 41 U.S.C. §§ 601-13 (2002), and U.S. Const. amend. V.

## BACKGROUND

### I. THE CONTRACTS

7. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and a substantial ability to affect the prices it paid for military fuel.

8. From at least 1982 to 1999, Plaintiffs and DESC entered a series of long-term contracts involving the purchase of approximately $4 billion of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States.

9. Plaintiffs' contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause permitted DESC to change the monthly price it paid Plaintiffs for fuel by as much as 110 percent of the contract price.

10. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Plaintiffs against market fluctuations, and, second, to ensure that the prices DESC paid Plaintiffs for military fuel under the long-term contracts reflected at least fair market value.

11. A January 5, 1993 memorandum from DLA's Deputy Director, Directorate Contracting and Production, states that DESC's standard price adjustment clause was intended both to "ensure[] that the contract price will be awarded and remain at the market price," and to "ensure[] that the sale will be at the market price, which is fair and reasonable."

## II. PMM

12. DESC's price adjustment clause permitted DESC to adjust the prices it paid Plaintiffs for fuel based on changes in indexes published by the Department of Energy ("DOE") in the *Petroleum Marketing Monthly* (hereafter "PMM").

13. DESC was one of the principal users of PMM and worked with DOE in determining how PMM was published. A March 23, 1989 internal memorandum from DESC's Director, Office of Market Research and Analysis, states: "DOE normally will work with us to see that our needs are satisfied as we are one of the primary users of PMM." DESC never disclosed to its suppliers such as Plaintiffs its role in publication of PMM.

14. In basing price adjustments on PMM, DESC represented and warranted that PMM was adequate to accomplish its purposes of protecting against market fluctuations and ensuring that the prices DESC paid for military fuel reflected at least fair market value.

15. In basing price adjustments on PMM, DESC represented and warranted that PMM accurately reflected at least the fair market value for fuel and that prices for military fuel were fair and reasonable.

16. DESC's Pre-Negotiation Briefing Memoranda, which established pricing policies for DESC's military fuel contracts, expressly provided that DESC's price adjustment clause was "non-negotiable." Accordingly, suppliers of military fuel such as Plaintiffs were required to accept DESC's use of PMM to set military fuel prices or exit the market for military fuel.

17. Contrary to the acknowledged purposes of DESC's price adjustment clause, DOE did not design or intend for PMM to be used to set or adjust prices in response to market fluctuations, and PMM did not reflect at least the fair market value for military fuel.

18. Among the many inadequacies of PMM for use in setting military fuel prices, PMM suffered from a statistical flaw known as an "index number problem," whereby different categories or classes of fuel were used to calculate the value of the index in different months. Such an index number problem renders use of PMM essentially meaningless for measuring changes in price levels from month to month as DESC did. After this case was filed, DOE publicly conceded that PMM suffered from an index number problem.

19. As early as January 1986, DESC concluded in an internal assessment that "the movement of PMM as compared to other [market] references . . . indicates that PMM may have moves as much as one or two cents per gallon out of step with such . . . references." In contrast, DESC typically required suppliers such as Plaintiffs to submit bids to sell military fuel to the one-ten-thousandth of a cent ($.000001).

20. DESC did not disclose to its suppliers such as Plaintiffs its 1986 assessment and, notwithstanding the assessment, continued to use PMM in its price adjustment clause.

21. In 1987, DESC conducted a second study of PMM which found that PMM did not protect against market fluctuations and did not ensure that the prices DESC paid for military fuel under the long-term contracts reflected at least fair market value.

22. DESC did not disclose this 1987 study to its suppliers such as Plaintiffs and, despite the study, continued to use PMM in its price adjustment clause.

23. Seven years later, in 1994, senior officials at DLA learned of DESC's 1987 study, and, upon review of the study, directed DESC to stop using PMM to set military fuel prices.

24. In implementing DLA's directive, DESC admitted that its use of PMM had distorted military fuel prices materially, stating in internal documents that "direct contract price comparisons are not possible" between DESC's military fuel prices and fair market value.

25. Consistent with DESC's internal admissions, a DOE report admits that PMM differed by as much as nineteen percent from comparable prices published by the Bureau of Labor Statistics.

26. Thus, DESC, as the sole purchaser and user of military fuel, used PMM on a "non-negotiable" basis to set military fuel prices despite knowing that PMM was not designed to be used to set or adjust prices, and despite knowing that PMM did not reflect at least fair market value and did not result in fair and reasonable prices.

27. As a result of DESC's use of PMM in its price adjustment clause, DESC paid Plaintiffs prices for military fuel that were materially below fair market value and were not fair and reasonable.

28. DESC also used other indexes in its price adjustment clause to make price adjustments. On information and belief, DESC also knew that some of the other indexes it used to set or adjust prices were not appropriate for these purposes.

## III. DESC'S OTHER DISTORTIONS OF THE MARKET VALUE OF MILITARY FUEL

29. Beyond DESC's use of PMM and other price indexes to set military fuel prices below fair market value, DESC distorted the market value of military fuel in other ways.

30. DESC conducted an auction for fuel contracts, whereby DESC offered fuel contracts to bidders that agreed to match the price, or adjusted price, of other bidders. More than fifty percent of the fuel offered (as a percentage of that purchased) commonly was subject to DESC's auction. In furtherance of DESC's auction, DESC procured purchases of fuel set aside for small business together with purchases from large businesses rather than conducting the two procurements separately.

31. DESC also provided a ten percent price preference to minority-owned suppliers. In some years, more than twenty percent of the fuel offered (as a percentage of that purchased) was subject to DESC's minority price preference.

32. As a result of DESC's auction of fuel contracts and its ten percent price preference for minority-owned suppliers, DESC paid Plaintiffs prices for military fuel that were materially below fair market value and were not fair and reasonable.

## IV. PLAINTIFFS' CLAIMS

33. Pursuant to the Contract Disputes Act, Plaintiffs submitted certified claims to DESC's contracting officer seeking relief from DESC's military fuel prices.

34. Chevron submitted certified claims under the following contracts on the dates indicated:

| Contract | Date Submitted |
|---|---|
| DLA600-82-D-0453 | January 31, 2002 |
| DLA600-82-D-0492 | January 31, 2002 |

| Contract | Date Submitted |
|---|---|
| DLA600-82-D-0621 | January 31, 2002 |
| DLA600-83-D-0558 | January 31, 2002 |
| DLA600-84-D-0484 | January 31, 2002 |
| DLA600-84-D-0498 | December 6, 2001 |
| DLA600-84-D-0602 | January 31, 2002 |
| DLA600-86-D-0500 | December 6, 2001 |
| DLA600-86-D-0630 | December 6, 2001 |
| DLA600-86-D-0891 | December 6, 2001 |
| DLA600-87-D-0469 | December 6, 2001 |
| DLA600-88-D-0552 | December 6, 2001 |
| DLA600-89-D-0480 | December 6, 2001 |
| DLA600-89-D-0588 | December 6, 2001 |
| DLA600-89-D-1017 | December 6, 2001 |
| DLA600-90-D-0531 | December 6, 2001 |
| DLA600-91-D-0581 | December 6, 2001 |
| DLA600-92-D-0460 | January 31, 2002 |
| DLA600-92-D-0513 | December 6, 2001 |
| DLA600-92-D-0539 | December 6, 2001 |
| DLA600-93-D-0507 | December 6, 2001 |
| DLA600-93-D-0568 | December 6, 2001 |
| DLA600-93-D-0570 | December 6, 2001 |
| DLA600-94-D-0535 | December 6, 2001 |
| SPO600-95-D-0462 | December 6, 2001 |
| SPO600-95-D-0521 | December 6, 2001 |
| SPO600-96-D-0520 | December 6, 2001 |
| SPO600-97-D-0514 | December 6, 2001 |
| SPO600-98-D-0507 | December 6, 2001 |
| SPO600-99-D-0534 | December 6, 2001 |

| Contract | Date Submitted |
|---|---|
| SPO600-99-D-0535 | December 6, 2001 |
| SPO600-99-D-0555 | December 6, 2001 |

35. On February 12, 2003, Chevron submitted two additional claims under contracts with DESC for the delivery of JP-4 and F-76.

36. Texaco submitted certified claims under the following contracts on the dates indicated:

| Contract | Date Submitted |
|---|---|
| DLA600-83-D-0620 | October 5, 2001 |
| DLA600-84-D-0510 | October 5, 2001 |
| DLA600-84-D-0561 | October 5, 2001 |
| DLA600-86-D-0575 | September 7, 2001 |
| DLA600-87-D-0494 | September 25, 2001 |
| DLA600-88-D-0476 | September 25, 2001 |
| DLA600-89-D-0457 | September 25, 2001 |

## V. DESC'S FINAL DECISIONS

37. On February 11, 2002, DESC's contracting officer denied the claims Texaco submitted on September 7, 2001, September 25, 2001, and October 5, 2001.

38. On July 2, 2002, DESC's contracting officer denied the claims Chevron submitted on December 6, 2001, and January 31, 2002.

39. On March 4, 2003, DESC's contracting officer denied the two additional claims Chevron submitted on February 12, 2003.

40. DESC denied that ChevronTexaco was entitled to any recovery and denied all of ChevronTexaco's claims.

41. Pursuant to the Contract Disputes Act, ChevronTexaco hereby timely files suit upon and appeals DESC's February 11, 2002, July 2, 2002, and March 4, 2003 decisions denying ChevronTexaco's claims.

**COUNT I**
**(Illegality)**

42. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 41, above.

43. DESC knowingly awarded and administered Plaintiffs' contracts in violation, *inter alia*, of FAR § 16.203 by basing price adjustments on indexes rather than on Plaintiffs' own established fuel prices.

44. Even if FAR § 16.203 permitted DESC to base price adjustments on indexes rather than on Plaintiffs' own established fuel prices, DESC knowingly awarded and administered Plaintiffs' contracts in violation, *inter alia*, of FAR § 16.203 by basing price adjustments on indexes that were not market-based, were not designed or intended to be used to set or adjust prices, and did not reflect at least the fair market value of military fuel.

45. DESC knowingly awarded and administered Plaintiffs' contracts in violation, *inter alia*, of FAR § 15.802(b) [currently codified at FAR § 15.402(a)] by using PMM and other indexes to establish prices for military fuel that were not fair and reasonable.

46. DESC knowingly awarded and administered each of Plaintiffs' contracts in violation, *inter alia*, of the Office of Federal Procurement Policy Act and its implementing regulations (and, prior to its enactment, FAR § 15.610) by using prohibited auction techniques, whereby DESC awarded contracts to bidders that agreed to match other bidders' prices.

47. DESC knowingly awarded and administered Plaintiffs' contracts in violation, *inter alia*, of DOD Federal Acquisition Regulation ("DFAR") pt. 219 by improperly soliciting

and awarding portions of the procurements set aside for small businesses together with those for large businesses.

48. DESC knowingly awarded and administered Plaintiffs' contracts in violation, *inter alia*, of the equal protection component of the fifth amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling governmental interest.

49. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid for military fuel below fair market value.

50. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts damaged Plaintiffs.

51. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

52. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 51, above.

53. DESC knowingly awarded and administered Plaintiffs' contracts in violation of law and regulation.

54. In awarding and administering Plaintiffs' contracts, DESC knowingly based price adjustments on PMM and other indexes that were not adequate to accomplish the stated purposes of DESC's price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

55. In awarding and administering Plaintiffs' contracts, DESC knowingly based price adjustments on PMM and other indexes that were not designed or intended to be used to set or adjust prices and which did not reflect at least the fair market value of military fuel.

56. In awarding and administering Plaintiffs' contracts, DESC knew that the contracts did not provide for payment of at least the fair market value of military fuel and knew that the contracts did not provide for fair and reasonable prices.

57. In awarding and administering Plaintiffs' contracts, DESC worked with DOE to determine how PMM was published and to "see that our needs are satisfied as . . . one of the primary users of PMM."

58. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

59. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that it based price adjustments on PMM and other indexes that were not adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

60. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that PMM and other indexes were not designed or intended to be used to set or adjust prices and did not reflect at least fair market value.

61. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the contracts did not

provide for payment of at least fair market value for military fuel and did not provide for fair and reasonable prices.

62. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that DESC worked with DOE to determine how PMM was published and to "see that our needs are satisfied as . . . one of the primary users of PMM."

63. Plaintiffs reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

64. DESC's material and/or fraudulent misrepresentations damaged Plaintiffs.

65. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of rescission and restitution, damages, or reformation.

**COUNT III**
**(Breach of Contract)**

66. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 65, above.

67. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

68. DESC's basing price adjustments on PMM and other indexes that were adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

69. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices and which reflected at least the fair market value of fuel was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

70. DESC's paying at least fair market value for military fuel and DESC's paying fair and reasonable prices were material conditions of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

71. DESC's negotiating and administering the contracts in good faith was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

72. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

73. In contravention of DESC's contractual obligations, DESC based price adjustments on PMM and other indexes that were not adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

74. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as PMM and other indexes that were not designed or intended to be used to set or adjust prices and which did not reflect at least the fair market value of fuel.

75. In contravention of DESC's contractual obligations, DESC did not pay at least fair market value for military fuel and did not pay fair and reasonable prices for fuel.

76. In contravention of DESC's contractual obligations, DESC did not negotiate and administer the contracts in good faith. Instead, DESC used a non-negotiable illegal price adjustment clause that based price adjustments on PMM and other indexes, and worked with

DOE to determine how PMM was published and to "see that our needs are satisfied as . . . one of the primary users of PMM."

77. DESC's contravention of its contractual obligation constituted breach of contract.

78. DESC's breach of contract damaged Plaintiffs.

79. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

80. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 79, above.

81. DESC knowingly awarded and administered Plaintiffs' contracts in violation of law and regulation.

82. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts rendered at least the price terms of Plaintiffs' contracts invalid and unenforceable.

83. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts damaged Plaintiffs.

84. At least the pricing terms of Plaintiffs' contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Plaintiffs delivered to DESC.

85. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration And Frustration of Purpose)**

86. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 85, above.

87. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

88. DESC's basing price adjustments on PMM and other indexes that were adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

89. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices and that reflected at least the fair market value of fuel was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

90. DESC's paying at least fair market value for the military fuel it purchased and DESC's paying fair and reasonable prices were a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

91. DESC's negotiating the contracts in good faith was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

92. DESC violated law and regulation in awarding and administering the contracts.

93. DESC based price adjustments on PMM and other indexes that were not adequate to accomplish the stated purposes of its price adjustment clause to protecting against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

94. DESC based price adjustments on PMM and other indexes that were not designed or intended to be used to set or adjust prices and that did not reflect at least fair market value.

95. DESC did not pay at least fair market value for military fuel or pay fair and reasonable prices.

96. DESC did not negotiate the contracts in good faith.

97. DESC's violation of law and regulation in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

98. DESC's failure to base price adjustments on PMM and other indexes that were not adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value constituted a failure of consideration and frustrated the purpose of the contracts.

99. DESC's use of PMM and other indexes that were not designed or intended to be used to set or adjust prices and that did not reflect at least fair market value constituted a failure of consideration and frustrated the purpose of the contracts.

100. DESC's failure to pay at least fair market value for military fuel and its failure to pay fair and reasonable prices constituted a failure of consideration and frustrated the purpose of the contracts.

101. DESC's failure to negotiate the contracts in good faith constituted a failure of consideration and frustrated the purpose of the contracts.

102. This failure of consideration and frustration of the purpose of the contracts damaged Plaintiffs.

103. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

104. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 103, above.

105. Plaintiffs entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

106. Plaintiffs entered and performed the contracts with the intent that PMM and other indexes were adequate to accomplish the stated purposes of DESC's price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

107. Plaintiffs entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices and reflected at least fair market value. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

108. Plaintiffs entered and performed the contracts with the intent that DESC pay at least fair market value for military fuel and pay fair and reasonable prices. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

109. DESC did not comply with law and regulation in awarding and administering the contracts.

110. DESC did not use PMM and other indexes that were adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

111. DESC based price adjustments on PMM and other indexes that were not designed or intended to be used to set or adjust prices and that did not reflect at least fair market value.

112. DESC did not pay fair market value for military fuel or pay fair and reasonable prices.

113. If DESC did not knowingly award and administer the contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer the contracts in accordance with law and regulation.

114. If DESC did not know that the PMM and other indexes were not adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value, as alleged above, then DESC must be presumed to have used the PMM and other indexes with the intent that they were adequate to accomplish the stated purposes of its price adjustment clause.

115. If DESC did not know that PMM and other indexes were not designed or intended to be used to set or adjust prices and did not reflect at least fair market value, as alleged above,

then DESC must be presumed to have used PMM and other indexes with the intent that they were designed or intended to be used to set or adjust prices and reflected at least fair market value.

116. If DESC did not knowingly fail to pay at least fair market value for military fuel and did not knowingly fail to pay prices that were fair and reasonable, as alleged above, then DESC must be presumed to have intended to pay at least fair market value for military fuel and to have intended to pay fair and reasonable prices.

117. As a result of a mistake, DESC and Plaintiffs entered and performed the contracts in violation of law and regulation.

118. As a result of a mistake, DESC and Plaintiffs entered and performed the contracts using the PMM and other indexes that were not adequate to accomplish the stated purposes of DESC's price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value.

119. As a result of a mistake, DESC and Plaintiffs entered and performed the contracts using PMM and other indexes that were not designed or intended to be used to set or adjust prices and did not reflect at least fair market value.

120. As a result of a mistake, DESC and Plaintiffs entered and performed the contracts that did not provide for the payment of at least fair market value for military fuel and did not provide for payment of fair and reasonable prices.

121. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed the contracts in violation of law and regulation.

122. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed the contracts using the PMM and other indexes that were not

adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value

123. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed the contracts using PMM and other indexes to set or adjust prices.

124. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed the contracts that did not provide for the payment of at least fair market value for military fuel and did not provide for payment of fair and reasonable prices.

125. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

126. Alternatively, if DESC was not mistaken in awarding and performing the contracts using the PMM and other indexes that were not adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

127. Alternatively, if DESC was not mistaken in awarding and performing contracts using PMM and other indexes to set or adjust prices, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

128. Alternatively, if DESC was not mistaken in entering and performing contracts that did not provide for payment of at least fair market value for military fuel and that did not provide

for payment of fair and reasonable prices, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

129. The parties' mutual mistake and/or DESC's failure to disclose Plaintiffs' unilateral mistake damaged Plaintiffs.

130. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $450,275,222.68, plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

131. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 130, above.

132. Plaintiffs have property rights in and in relation to the fuel it delivered to DESC. In addition, Plaintiffs have property rights in relation to DESC's procurement of the fuel Plaintiffs delivered.

133. With no fully supporting claim of right, DESC took possession of and infringed upon Plaintiffs' property rights in and in relation to the fuel it delivered.

134. DESC's taking of Plaintiffs' property was for a public purpose.

135. To the extent that DESC's taking of Plaintiffs' property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

136. DESC effected a taking of Plaintiffs' property within the meaning of the Fifth Amendment of the United States Constitution.

137. DESC has not paid Plaintiffs just compensation for the taking of Plaintiffs' property.

138. DESC's failure to pay Plaintiffs just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Plaintiffs.

139. Plaintiffs are entitled to recover just compensation in an amount of at least $450,275,222.68, plus interest from the time of the taking.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment as follows:

1. $450,275,222.68, plus interest, or such further amount as established prior to judgment;

2. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

s/J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006
(202) 263-3208 (phone)
(202) 263-5208 (fax)

Counsel for Plaintiffs,
Chevron U.S.A. Inc., Texaco Inc.,
and Texaco Downstream LLC

*Of Counsel:*

Monica A. Aquino
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

John K. Wyma
Chevron U.S.A. Inc.
6001 Bollinger Canyon Road
San Ramon, CA 94583

October 4, 2005