# AWARD/CONTRACT

Page 1 of 14

1. Contract (Proc. Inst. Ident.) No.: A600-81-D-0354
3. Effective Date: 80 OCT 31.
4. Requisition/Purchase Request/Project No.: SEE RFP FILE FOR CONSOLIDATED PRs
4. Certified for National Defense under BDSA Reg. 2 and/or DMS Reg. 1. Rating:

5. Issued by — Code: SC0600
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION TWX 710-832-0600
ALEXANDRIA, VIRGINIA 22314 2.2a/2.2d
ATTN: B. ALLEN/DFSC-PD/47453

6. Administered by (If other than block 5): PRE-AWARD SURVEY - NONE
Code:

7. Delivery: For destination / Other (See below) SEE SCHEDULE

8. Contractor — Code: 81355 — Facility Code:
Name and Address (Street, city, county, State and ZIP code):
ASHLAND PETROLEUM COMPANY
1409 WINCHESTER AVENUE
ASHLAND, KY 41101

9. Discount for Prompt Payment: NET 30 DAYS

10. Submit Invoices (4 copies unless otherwise specified) to Address Shown in Block: SEE BLOCK 12

11. Ship to/Mark for — Code:
SEE SCHEDULE

12. Payment will be made by — Code: SL4900
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION, BUILDING 5
ATTN: DFSC-CDX
ALEXANDRIA, VIRGINIA 22314

13. This procurement was ☐ advertised, ☒ negotiated, pursuant to: ☒ 10 U.S.C. 2304 (a)( 10) ☐ 41 U.S.C. 252 (c)( )

14. Accounting and Appropriation Data:
SEE CLAUSE L150

| 15. Item No. | 16. Supplies/Services | 17. Quantity | 18. Unit | 19. Unit Price | 20. Amount |
|---|---|---|---|---|---|
| | (a) This document confirms and incorporates by reference Award wire dated 31 Oct 80. | | | | |
| | (b) A copy of Clause E12 (Contract Schedule) and various other clauses agreed to by the parties are attached hereto for informational purposes. In addition, pages 1 through 6 and 102 through 139 of RFP DLA600-80-R-0161 dated 80 May 29 and Amendments 0001 - 0008 are also attached for convenience and informational purposes. The following clauses are deleted: E19.03, L94, L97, L176, L176.01, L176.03. | | | | |

21. Estimated Total Amount of Contract: $ 146,829,719

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 26 AS APPLICABLE

22. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 2 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

26. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

23. Name of Contractor
BY: Foy H. Wade (Signature of person authorized to sign)

27. United States of America
BY: John D. Hilliard (Signature of Contracting Officer)

24. Name and Title of Signer (Type or print): Foy H. Wade, Manager Aviation Fuels Division

25. Date Signed: 11/24/80

28. Name of Contracting Officer (Type or print): JOHN D. HILLIARD

29. Date Signed: 0 3 DEC 1980

SCHEDULE DLA600-81-D-0354

SUPPLIES –

E12 SUPPLIES TO BE FURNISHED (DFSC 1988 MAY)

(A) The supplies to be furnished hereunder, F.O.B. delivery points, method of delivery and estimated quantities are as follows.

a(B) Prices indicated hereunder are subject to Clause E19.12, ECONOMIC PRICE ADJUSTMENT

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE W/FSII |
|---|---|---|---|
| | DFSC | JP-4 | NSN 9130-00-256-8613 |
| 0101 | 31,400,000 | B | $.84790 |
| FOB Origin delivery of 31,400,000 gallons at Ashland, KY. | | | |
| 0201 | 41,469,632 | B | $.84790 |
| FOB Origin delivery of 41,469,632 gallons at Buffalo, NY. | | | |
| 0301 | 30,000,000 | P | $.90190 W/O FSII |
| FOB Origin delivery of 30,000,000 gallons at St. Paul Park, MN. | | | |
| 0401 | 1,100,000 | TT | $.87210 |
| Destination delivery of 1,100,000 gallons to Youngstown, MA. | | | |
| 0501 | 4,680,000 | B | $.85720 |
| Destination delivery of 4,680,000 gallons to DFSP Cincinnati, OH. | | | |
| 0601 | 7,640,000 | P | $.86130 |
| Destination delivery of 7,640,000 gallons to Rickenbacker AFB, OH. | | | |
| 0701 | 2,000,000 | TT | $.87350 |
| FOB Destination delivery of 2,000,000 gallons to Manfield, MA OH. | | | |
| 0801 | 8,000,000 | P | $.86440 |
| Destination delivery of 8,000,000 gallons to Wright Patterson AFB, OH. | | | |
| 0901 | 240,000 | TT | $.88720 |
| Destination delivery of 240,000 gallons to ONG Akron, Canton, OH. (Requires truck equipped with pump). | | | |
| 1001 | 4,200,000 | TT | $.85760 |
| Destination delivery of 4,200,000 gallons to Shewmaker Field, Louisville, KY. | | | |

A600-81-D-0354

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE |
|---|---|---|---|
| | DFSC | JP-4 | NSN 9130-00-256-8613 |
| 1101 | 600,000 | TT | $.86380 |
| Destination delivery of 600,000 gallons to Fort Knox, KY. | | | |
| 1201 | 180,000 | TT | $.86420 |
| Destination delivery of 180,000 gallons to Kentucky NG Frankfort, KY. | | | |
| 1301 | 9,000,000 | TT | $.86880 |
| Destination delivery of 9,000,000 gallons to Greater Pittsburg Apt, PA. | | | |
| 1401 | 1,800,000 | TT | $.93530 |
| Destination delivery of 1,800,000 gallons to Kanawha Co. Arpt. Charleston, W. VA. | | | |
| 1501 | 130,000 | TT | $.91160 |
| Destination delivery of 130,000 gallons to West Virginia Air National Guard Parkersburg, W. VA. | | | |
| 1601 | 6,200,000 | TT | $.86010 |
| Destination delivery of 6,200,000 gallons to Niagara Falls International Airport, N.Y. | | | |
| 1701 | 500,000 | TT | $.89340 |
| FOB Destination delivery of 500,000 gallons to NASA Lewis Res Ctr, Cleveland,MA, OH. | | | |
| 1801 | 4,200,000 | TT | $.89470 |
| FOB Destination delivery of 4,200,000 gallons to Hulman Field, Terre Haute, IN. | | | |
| 1901 | 3,110,000 | TT | $.88590 |
| FOB Destination delivery of 3,110,000 gallons to Allison Dev. GMC, Indianapolis, IN. | | | |
| 2001 | 9,500,000 | TT | $.89540 |
| FOB Destination delivery of 9,500,000 gallons to Ft. Campbell, KY. | | | |

DLA600-81-D-0354

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE |
|---|---|---|---|
| | DFSC | JP-5 | NSN 9130-00-273-2379 |
| 2101 | 15,000 | TT | $ .96657 |
| Destination delivery of 15,000 gallons to Wright-Patterson AFB | | | |
| 2201 | 1,980,000 | TT | $.92260 |
| Destination delivery of 1,980,000 gallons to G. F. Evandale | | | |
| 2301 | 864,000 | TT | $.94414 |
| Destination delivery of 864,000 gallons to GE Peebles, OH | | | |
| 2401 | 200,000 | TT | $.94708 |
| Destination delivery of 200,000 gallons to Allison DIV GMC, Indianapolis, IN | | | |
| 2501 | 20,000 | TT | $.90900 |
| Origin delivery of 20,000 gallons at Covington, KY | | | |

NOTES: 1. The Small Business, Labor Surplus Area and Small Disadvantaged Minority Business Concerns Subcontracting Program Clauses in this contract will be administered by the cognizant Defense Contract Administration Services Region, which is:

DCASR Cleveland
A. J. Celebreeze Federal Bldg.
1240 E. 9th Street
Cleveland, OH 44199

2. JP-5 supplied under this contract will have a minimum flash point of 130 degrees Fahrenheit and a freeze point of -44° Fahrenheit.

3. Unless the parties agree otherwise, the minimum/maximum quantities for individual deliveries shall be as follows:

| PRODUCT | M.O.D. | SHIPPING POINT | MINIMUM | MAXIMUM |
|---|---|---|---|---|
| JP-4 | B | Catlettsburg, KY | NONE | 20,000 bbls each with 5 days reblending between barges |
| JP-4 | P | Columbus, OH | 300,000* gallons | NONE |
| JP-4 | P | Medway, OH | 300,000* gallons | NONE |

*Unless mutually agreed by Ashland representative.

4. The term barge used above shall include lake tanker.

5. The quantity shown in the schedule is for the first program year. The ordering period shall be Date of Award through 30 Sep 81. Deliveries against item 0301 shall not begin for 6 to 8 weeks unless by mutual agreement.

The quantity applicable for the second through fifth program years in accordance with Clause H1.08.200, Deliveries and Contract Periods (DFSC 1980 APR) for each line item shall be the same.

6. Line item 2101 shall have a minimum flash point of 135 degrees Fahrenheit. The delivery dates against this item shall be by mutual agreement of the parties.

7. Reference Clause L171, Subcontracting Plan for Small Business and Small Disadvantaged Business Concerns (1979 JUL). The negotiated subcontracting plan as submitted by Ashland Petroleum Co. by letter dated 10 October 1980 is hereby incorporated and made a part of the contract. (See Attachment A).

E19.12 ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

The Contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increase in the published or posted prices referenced in the Contractor's bid or proposal.

PART A

As used throughout this Section:

(a) The term "listed items" means the items of Section E of the Schedule that are listed in the Reference Price Tabulation of Part C of this Section and are the only items to which escalation shall apply, unless otherwise provided in the contract schedule.

(b) The term "base price" means the unit price set forth opposite the item in Section E of the Schedule.

(c) The term "reference price" means the price set forth in this Section with which the base price is to fluctuate.

(d) The term "date of delivery" means

(i) the date and time vessel begins to load where contract calls for delivery at origin into tanker or barge;

(ii) the date and time vessel begins to discharge where contract calls for delivery at destination by tanker or barge;

(iii) the date and time product commences to move past the specified f.o.b. point where contract calls for delivery into storage by pipeline;

(iv) the date product is received for all methods of delivery other than (i), (ii), and (iii) above.

PART B

(a) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron Station, Alexandria, Va., 22314 of any change in the reference price by telegram dated (preferably confirmed promptly by letter), registered letter mailed, or unregistered letter received, within fourteen (14) days from the date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in reference price, such increase shall apply only to deliveries made on and after the date of receipt by the Contracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in the reference price, such decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) The Contracting Officer will issue a Change Order to this contract to reflect any change pursuant to this Section.

(b) Notwithstanding any provision of this Section to the contrary, the prices payable under this contract shall in no event exceed any of the following:

(i) the Contractor's legal prices under the Federal Energy Administration's Mandatory Petroleum Price Regulations, if applicable.

(c) In the event the reference price product is not subject to Department of Energy price control, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions:

(ii) During the term of this contract, substantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iii) During the term of this contract, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sale of the reference price product to non-government customers except where constrained by contract.

(d) In the event the reference price product is subject to Department of Energy price controls, Contractor warrants as follows:

E19.12 (Cont'd)

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions.

(ii) The reference price is a price posted by Contractor for a product which, as of the contract award date, is subject to Mandatory Price and Allocation controls under regulations issued by the Department of Energy (DOE) (10 Code of Federal Regulations, Parts 210, 211, 212).

(iii) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, substantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iv) Any change in the reference price furnished for the purpose of economic price adjustment hereunder will not exceed contractor's maximum allowable price for the reference price product under DOE Mandatory Petroleum Price Regulation.

(v) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sales by the reference price product to non-government customers except where constrained by contract.

(e) In connection with the warranties in (c) and (d) above, Contractor agrees that the Contracting Officer or his designated representative, who are employees of the U.S. Government, shall have the right to examine books, records, documents, and other data of the Contractor as may be required to verify Contractor's compliance.

(f) The Contractor shall have the right to appeal under the Clause entitled "Disputes" from any determination made by the Contracting Officer under this Clause.

(g) No change in contract price shall be processed under this clause until verification of posting change has been received by the Contracting Officer.

(h) In the event the reference price is discontinued, or its method of calculation is altered substantially, the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described herein. This contract shall be amended to reflect such substitute reference price, effective on the date prior reference price is discontinued or altered. In the event the parties fail to agree on an appropriate substitute, the matter shall be resolved in accordance with the Disputes clause of the contract.

(i) Notwithstanding any other provision of the clause, no upward adjustment shall apply to supplies which are required to be delivered prior to the effective date of the adjustment unless the Contractor's failure to deliver in accordance with the delivery schedule arises from causes beyond the control and without the fault or negligence of the Contractor within the meaning of the clause of this contract entitled "Default", in which case the contract shall be amended to make an equitable extension of the delivery schedule.

PART C

(a) The prices payable under this contract for listed items shall be the base price for the listed item increased or decreased by the amount, determined according to the formula in paragraph (b) below, that the reference price for the listed item shall have been increased or decreased to and including the date of delivery.

(b) The amount of increase or decrease in the base price shall be (check appropriate box and complete applicable blanks)

[X] the same number of cents, or fractions thereof, that the reference price increases or decreases per like unit of measure.

[ ] the number of cents, or fractions thereof, determined by the ratio of $________ per gallon for each $________ per barrel that the reference price increases or decreases.

[ ] the number of cents, or fractions thereof, at the rate of $__________ per gallon for each full $__________ per barrel that the reference price increases or decreases.

(c) The reference price with which the base price for the item is to fluctuate and which is more fully defined in the tabulation to follow) is

(check appropriate box and complete applicable blanks)

[X] price posted by [ ] the average of the prices posted by

DLA600-81-D-0354

E19.12 (Cont'd)

Ashland Petroleum Co.
(name of company)

(name of company)

(name of company)

(name of company)

(name of company)

(name of company)

(The name of the company or companies posting the reference price shall be identified in Column II of the following tabulation by the number appearing opposite the name of the company(s)).

| I ITEM NO. (LISTED ITEMS) | II NAME OF COMPANY(S) | III COMPANY NAME OF PRODUCT | IV LOCATION WHERE POSTED PRICE IS APPLICABLE | V METHOD OF DELIVERY APPLICABLE TO THE POSTED PRICE | VI POSTED PRICE PAY AS OF 10-31-80 | VII MAXIMUM PRICE PAYABLE UNDER CONTRACT ** |
|---|---|---|---|---|---|---|
| 0101-0201<br>0401-2001 | Ashland | Reg Gas (60%)<br>Kerosene (40%) | Catlettsburg, KY for Ohio Shipments | TT | $.9215<br>$.8910 | See Clause E19.09 |

Base reference price calculated as follows:

60% $.9215 + 40% $.8910 = $.9093 Base Reference Price

| | | | | | | |
|---|---|---|---|---|---|---|
| 0301 | Ashland | Reg Gas (60%)<br>Kerosene(40%) | St. Paul Park | TT | $.925<br>$.91 | |

Base Reference Price calculated as follows:

60% $.925 + 40% $.91 = $.919 Base Reference Price

| | | | | | | |
|---|---|---|---|---|---|---|
| 2101-2501 | Ashland | Kerosene | Louisville | TT | $.889 Base Reference Price | |

*EXCLUDES ALL TAXES
**INCLUDING ANY TAX INCLUDED IN THE BASE PRICE

DLA600-81-D-0354

E19.09 UPWARD CEILINGS ON ECONOMIC PRICE ADJUSTMENT/PRICE ESCALATION (DPSC 1979 MAR)

Contractor agrees that the total increase in any unit price pursuant to the Economic Price Adjustment/Price Escalation provision of this contract shall not exceed 50 percent of the original base price for individual contract items, except in the situations provided hereafter.

1. If at any time the contractor has reason to believe that within the near future a price adjustment will be required under the Economic Price Adjustment/Price Escalation provision of this contract and that the resultant adjustment when added to the latest contract price for the item(s) in question will exceed the current contract ceiling price for the item(s), the contractor shall notify the Contracting Officer of the expected increase. At the same time, the contractor shall propose a revised ceiling which it believes to be sufficient to permit completion of remaining contract performance. Contractor's proposal shall be supported by appropriate explanations and documentation. The parties agree to promptly undertake negotiations regarding the proposed new ceiling.

2. If, in the absence of an agreement on a new ceiling, notice is given by the contractor of an actual price change which results in a unit price for contract item(s) which exceeds the current ceiling, the contractor will have no further obligation under this contract to fill pending or future orders for the specific line item(s) in question as of the effective date of the increase, as long as the unit price exceeds the ceiling. If, however, notwithstanding the lack of agreement on a new ceiling, the Contracting Officer indicates in writing that the Government is prepared to purchase the line item(s) for the price as adjusted under the Economic Price Adjustment/Price Escalation provisions beyond the current ceiling, the contractor will be obligated to continue to honor orders placed for the specific line item in question.

E11.0? FREIGHT RATE ADJUSTMENTS (DESC 1978 MAY)

(a) In the event that a change occurs in any freight rate identified below, the price for the item affected by such change in freight rate shall be increased or decreased by the same number of cents or fractions thereof per like unit or measure as such freight rate is increased or decreased, notwithstanding any contract price provision in this contract to the contrary. There shall be no change in price for any item delivered prior to the effective date of any change in freight rates.

(b) The term "freight rate", as used herein, means the common carrier freight rate between the final shipping point and the delivery point for the item shown in the Schedule.

(c) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron Station, Alexandria, Va., 22314, in writing, of any change in the freight rate by telegram dated, registered letter mailed, or unregistered letter received, within fourteen (14) days from the date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in freight rate, such increase shall apply only to deliveries made on or after the date of receipt by the Contracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in freight rate, such decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) The Contracting Officer will promptly issue a modification to this contract to reflect any change in rate, provided, however, that with respect to increase, Contractor has furnished sufficient documentation to permit the Contracting Officer to verify such increases.

(d) The items to which this Section applies and the applicable tariffs are as follows:

| ITEM NOS. | BASE FREIGHT RATES | TARIFF OR TIMBER | FRT. RATE W/FUEL SURCHARGE | PUBLISHED BY |
|---|---|---|---|---|
| 0401 | $.0214 | BCC 2006 B, Sect. 2 | $.0242 (13%) | Bulk Carriers |
| 0501 | $.0093 | Ashland Petroleum Co. | | |
| 0601 | $.0036 | | | |
| 0701 | $.0256 | Item 415 | None | Oh. River Pipeline Co. |
| 0801 | $.0026 | | | Ray Molder Cont. |
| 0901 | $.0337 | BCC 2006 B, Sect. 2 | $.0393 (13%) Also includes pump charge) | Sohio Pipeline Co. Bulk Carriers |
| 1001 | $.0086 | KTCC 5, Item 345 | $.0097 (13%) | Kentucky Bulk Carriers Conf. |
| 1101 | $:0141 | KTCC 5, Item 345 | $.0159 (13%) | |
| 1201 | $.0144 | KTCC 5, Item 345 | $.0163 (13%) | |
| 1301 | $.0209 | PA. 4, Sect. 1B | None | PA Carriers |
| 1401 | $.0773 | BCC 2004 A, Sect. 4 | $.0874 (13%) | Bulk Carriers |
| 1501 | $.0564 | BCC 2004 A, Sect. 4 | $.0637 (13%) | " |
| 1601 | $.0114 | BCCNY-7, Item 1530 | $.0122 (7%) | " |
| 1701 | $.0403 | BCC 2006 B, Sect. 2 | $.0455 (13%) | " |
| 1801 | $.0414 | BCC 2001, Item 1090 | $.0468 (13%) | " |
| 1901 | $.0336 | BCC 2001, Item 1090 | $.0380 (13%) | " |
| 2001 | $.0420 | KTCC5, Item 345 | $.047 (13%) | Kentucky Bulk |
| 2101 | $.0244 | BCC 2001, Sect. 2 | $.02757 (13%) | Bulk Carriers |
| 2201 | $.0120 | BCC 2001, Sect. 2 | $.01356 (13%) | Bulk Carriers |
| 2301 | $.0311 | BCC 2001, Item 1100 | $.03514 (13%) | " |
| 2401 | $.0337 | BCC 2001, Item 1080 | $.03808 (13%) | " |

DL*<00-81-D-0354

10.02 TRANSPORT TRUCKS AND TRUCK AND TRAILER FREE TIME AND DETENTION RATES (DFSC 1979 MAY)

Upon arrival of Contractors transport truck or truck and trailer, the receiving activity shall promptly designate the tanks into which the load is to be discharged. Free time will commence at the time the discharge hose is connected to fill pipe at the delivery point specified, and will end when discharge is completed. For items involving multiple drops, time between drops will not be included in free time. Contractor shall be paid for detention beyond free time for delays caused by the Government. A minimum of one hour free time is required. Rate for detention shall be comparable to regulated tariffs governing the local area of receiving activity.

(a) Free time for unloading transport truck or truck and trailer: 1-1/2 hours

(b) Rate for detention beyond the free time: $6.25 per each 15 minutes.

The above will not be considered in the evaluation of offers for award, except that free time of less than one hour or detention rates not comparable to regulated tariffs may render an offer unacceptable/bid nonresponsive.

UNLESS OFFEROR INDICATES OTHERWISE, FREE TIME WILL BE CONSIDERED UNLIMITED.

I14.200 INSPECTION AND ACCEPTANCE (DESC 1979 NOV)

On deliveries F.O.B. origin, acceptance of the supplies furnished hereunder will take place at origin notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. On deliveries F.O.B. destination, acceptance of the supplies furnished hereunder will take place at destination notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. The office responsible for inspection, in behalf of the Government, shall be as follows:

| ITEM(S) | SOURCE OF PRODUCT AND/OR SHIPPING POINT | INSPECTOR(S) |
|---|---|---|
| 0201, 1601 | Ashland Petroleum Co.<br>Station B, Box F<br>Buffalo, Erie Co., N.Y. 14207<br>(285 Employees) | DCASMA Syracuse<br>U.S. Courthouse and Fed. Bldg.<br>100 S. Clinton Street<br>Syracuse, NY 13260 |
| 0401, 1701, 0901<br>1301, 1401, 1501 | Ashland Petroleum Co.<br>Freedom, Beaver Co. PA 15042<br>(130 Employees) | DCASMA Pittsburgh<br>1610 - S. Federal Building<br>1000 Liberty Ave<br>Pittsburgh, PA. 15222 |
| 0701 | Ashland Petroleum Co.<br>Glessner Avenue<br>Findlay, Hancock Co. OH 45840 | DCASMA Dayton<br>% Defense, Electronics Supply Center Bldg 1<br>Dayton, OH. 45444 |
| 0601 | Ashland Petroleum Co.<br>3855 Fisher Road<br>Columbus, OH 43228 | DCASMA Dayton<br>% Defense, Electronics Supply Center Bldg 1<br>Dayton, OH. 45444 |
| 0801 | Ashland Petroleum Co.<br>Midway Terminal<br>4741 Osborn Road<br>Midway, OH. 45341 | DCASMA Dayton<br>% Defense, Electronics Supply Center Bldg 1<br>Dayton, OH. 45444 |
| 0301 | Ashland Petroleum Co.<br>St. Paul Park, MN. | DCASMA Twin Cities<br>2305 Ford Parkway<br>St. Paul, MN. 55116 |
| 0101, 0501 | Ashland Petroleum Co.<br>1409 Winchester Avenue<br>Ashland, Boyd Co. KY. 41101<br>(750 Employees) | DCASMA Cincinnati<br>Federal Bldg.<br>550 Main Street<br>Cincinnati, OH. 45202 |

I14.200 INSPECTION AND ACCEPTANCE (DFSC 1979 NOV) (Cont'd)

| ITEM(S) | SOURCE OF PRODUCT AND/OR SHIPPING POINT | INSPECTOR(S) |
|---|---|---|
| 1801, 1901, 1001<br>2001, 1101, 1201 | Ashland Petroleum Co.<br>4510 Algonguin Parkway<br>Louisville, Jefferson<br>Co., KY 40211<br>(110 Employees) | DCASMA Cincinnati<br>Federal Bldg.<br>550 Main Street<br>Cincinnati, OH. 45202 |
| 2101, 2201, 2301<br>2401, 2501 | Ashland Petroleum Co.<br>30th & James Streets<br>Latonia Station<br>Covington, KY. 41015 | DCASMA Cincinnati<br>Federal Bldg.<br>550 Main Street<br>Cincinnati, OH. 45202 |

L150 PREPARATION AND SUBMISSION OF INVOICES (DFSC 1978 NOV)

(a) ORDERS BY THE DEPARTMENT OF DEFENSE

(i) PAYING OFFICE:

(A) Orders placed by the Defense Fuel Supply Center or its designee as shown on Source Identification and Ordering Authorization (SIOATH) Forms - Invoices for Product payable against Defense Logistics Agency (Defense Fuel Supply Center) funds as cited on the Order for Supplies or Services, DD Form 1155, will be paid by the Defense Logistics Agency Administrative Support Center by mailing invoices to:

Defense Fuel Supply Center
ATTN: DFSC-CDK
Cameron Station, Bldg. 5
Alexandria, Virginia 22314

(B) ORDERS PLACED BY OTHER DEPARTMENT OF DEFENSE ACTIVITIES—Invoices shall be forwarded to the applicable Paying Office in accordance with instructions contained on the order.

(ii) SUBMISSION OF INVOICES AND CERTIFICATION OF RECEIPT

(A) Invoices submitted for payment shall be submitted in quadruplicate and shall contain the contract number, order number, name of tanker and cargo number, item number, contract description of supplies or services, sizes, quantities, unit prices, extended total, and if shipment is made on Government Bill of Lading, Bill of Lading number.

(B) CERTIFICATION OF RECEIPT

(1) F.O.B. DESTINATION DELIVERIES—For orders placed by the Defense Fuel Supply Center or its designee the consignee will certify Material Inspection and Receiving Report, DD Form 250 or DD Form 250-1 as applicable, and forward four copies (one of which will contain an original signature) to the payment office specified in paragraph (a)(i)(A) above. The signed copy will have the following information stamped, printed or typed on it: ORIGINAL RECEIVING REPORT FOR PAYMENT OF INVOICE.

For all other orders the consignee will certify Material Inspection and Receiving Report, DD Form 250 or DD Form 250-1 as applicable, and forward two copies to the appropriate paying office.

In either situation above if the consignee is not a U.S. organization, the authorized U.S. representative as indicated in the Source Identification and Ordering Authorization will certify the DD Form 250 or 250-1.

(2) F.O.B. ORIGIN DELIVERIES—For orders placed by the Defense Fuel Supply Center or its designee the Contractor shall support each invoice for payment with four copies (one of which will contain an original signature) of the Material Inspection and Receiving Report, DD Form 250 or DD Form 250-1 as applicable. The signed copy will have the following information stamped, printed or typed on it: ORIGINAL RECEIVING REPORT FOR PAYMENT OF INVOICE. The Material Inspection and Receiving Reports will be signed by the Quality Assurance Representative to certify acceptance of the product prior to submission of the invoices. These supporting documents will be mailed, with the invoice to the payment office specified in paragraph (a)(i)(A) above.

For all other orders the Contractor shall support each invoice with two copies of Material Inspection and Receiving Report, DD Form 250 or DD Form 250-1 as applicable.

The Material Inspection and Receiving Reports will be signed by the Quality Assurance Representative to certify acceptance of the product prior to submission with invoices. Duplicate signatures are acceptable.

(b) ORDERS BY OTHER FEDERAL AGENCIES—On orders placed by activities of Federal Departments, other than the Dept. of Defense, invoices shall be submitted as instructed by those activities. Such activities placing orders under this contract shall furnish the Contractor with the name and proper address of the activity to whom invoices shall be rendered and the name and address of the Disbursing Officer responsible for payment. Such activities shall also indicate the procedure for processing tax exemption certificates.

(c) CLASSIFIED CONTRACTS—To prevent disclosure of classified information, invoices submitted under classified contracts shall be so prepared that the supplies or services covered thereby can be identified only by reference to the contract. For example, the invoices may state "Contract DLA600——————. Item 2, -000 at $0.15 - $750,000". The security classification shown on the contract shall not appear on the invoices.

(d) PAYMENT—Unless expressly otherwise specified in the Schedule, payment of invoices will be made in United States currency.

STANDARD FORM 26, JULY 1966
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41CFR) 1-16.101

# AWARD/CONTRACT

PAGE 1 OF 9

1. CONTRACT (Proc. Inst. Ident.) NO.: DLA600-81-D-0445
2. EFFECTIVE DATE: 81 APR 24
3. REQUISITION/PURCHASE REQUEST/PROJECT NO.: SEE RFP FILE CONSOLIDATED PRs
4. CERTIFIED FOR NATIONAL DEFENSE UNDER BDSA REG. 2 AND/OR DMS REG. 1. RATING:

5. ISSUED BY CODE SC0600
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION TWX 710-832-0600 2.2a
ALEXANDRIA, VIRGINIA 22314 2.2c
ATTN: H. CIBOROWSKI/DFSC-PD/202-274-7453

6. ADMINISTERED BY (If other than block 5) CODE
PRE-AWARD SURVEY - NONE

7. DELIVERY
☐ FOB DESTINATION
☒ OTHER (See below) SEE SCHEDULE

8. CONTRACTOR CODE 6G077 FACILITY CODE
NAME AND ADDRESS (Street, city, county, State, and ZIP code)
GULF OIL CO, US
PRODUCT SUPPLY DEPARTMENT
P.O. BOX 1524
HOUSTON, TX 77001

9. DISCOUNT FOR PROMPT PAYMENT
NET 30 DAYS

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO ADDRESS SHOWN IN BLOCK
SEE BLOCK 12

11. SHIP TO/MARK FOR CODE
SEE SCHEDULE

12. PAYMENT WILL BE MADE BY CODE SA4900
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION, BUILDING 5
ATTN: DFSC-CDX
ALEXANDRIA, VIRGINIA 22314

13. THIS PROCUREMENT WAS ☐ ADVERTISED, ☒ NEGOTIATED, PURSUANT TO: ☒ 10 U.S.C. 2304 (a)( 10) ☐ 41 U.S.C. 252 (c)( )

14. ACCOUNTING AND APPROPRIATION DATA
SEE CLAUSE L150

| 15. ITEM NO. | 16. SUPPLIES/SERVICES | 17. QUANTITY | 18. UNIT | 19. UNIT PRICE | 20. AMOUNT |
|---|---|---|---|---|---|
| | (a) This document confirms and incorporates by reference the wire Notice of Award dated 24 Apr 81 as amended by wire dated 30 APR 81. (b) A copy of Clause E12 (Contract Schedule) and various other clauses agreed to by the parties are attached hereto for informational purposes. In addition, pages 2 through 5 and pages 108 through 147 of RFP DLA600-81-R-0061, dated 80 Oct 16 and Amendments 0001-0005 are also attached for convenience and informational purposes. The following clauses are deleted: E19.04, L94, L97, L176, L176.01, L176.03 and L195. | | | | |

21. Estimated 5 yr TOTAL AMOUNT OF CONTRACT $ 361,953,000.

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 26 AS APPLICABLE

22. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 2 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

26. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheet. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

23. NAME OF CONTRACTOR
BY [signature]
(Signature of person authorized to sign)

27. UNITED STATES OF AMERICA
BY [signature: Marie G. Pagan]
(Signature of Contracting Officer)

24. NAME AND TITLE OF SIGNER (Type or print)
Charles H. Nelson
General Mgr.-Prod. Supply

25. DATE SIGNED
6/1/81

28. NAME OF CONTRACTING OFFICER (Type or print)
MARIE G. PAGAN

29. DATE SIGNED
1981 JUL 13

103

* U.S. GOVERNMENT PRINTING OFFICE : 1966 OF—251-165—8601

SCHEDULE

SUPPLIES – DLA600-81-D-0445

E12 SUPPLIES TO BE FURNISHED (DFSC 1968 MAY)

(A) The supplies to be furnished hereunder, F.O.B. delivery points, method of delivery and estimated quantities are as follows.

(B) Prices indicated hereunder are subject to E19.12, ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE |
|---|---|---|---|
| | DFSC | JP-5 | NSN 9130-00-273-2379 |
| 0101 | 90,000,000 | TK | $1.093000 w/FSII |

Origin Delivery of 90,000,000 gallons at Port Arthur, TX.

| | | | |
|---|---|---|---|
| | 45,000,000 | TK | $1.093000 w/FSII |

Origin Delivery of 45,000,000 gallons at Port Arthur, TX (2nd through 5th Program Years)

| | | | |
|---|---|---|---|
| | DFSC | JP-4 | NSN 9130-00-256-8613 |
| 0201 | 63,000,000 | TK | $1.061000 w/FSII |

Origin Delivery of 63,000,000 gallons at Port Arthur, TX.

NOTES: 1. The ordering period on this contract is:

(a) JP-5

| QUANTITY (GALS) | PROGRAM YEAR | ORDERING PERIOD |
|---|---|---|
| 90,000,000 | FIRST | Date of Award through 31 Mar 82. |
| 45,000,000 | SECOND | 1 Apr 82 through 31 Mar 83 |
| 45,000,000 | THIRD | 1 Apr 83 through 31 Mar 84 |
| 45,000,000 | FOURTH | 1 Apr 84 through 31 Mar 85 |
| 45,000,000 | FIFTH | 1 Apr 85 through 31 Mar 86 |

(b) JP-4 – Date of award through 31 Mar 82.

2. Under Clause F16.01, TURBINE FUEL, AVIATION, GRADES JP-4 AND JP-5, which incorporates specification MIL-T-5624L, corrosion inhibitor is required. Accordingly, the contractor shall be allowed thirty days from date of award to provide for the installation of corrosion inhibitor injection facilities. Until such facilities are installed, JP-4 without corrosion inhibitor will not be acceptable to the Army or the Air Force; JP-5 without corrosion inhibitor will be acceptable to the Navy during this thirty (30) day period. The Delivery Period for JP-4 shall begin 30 days after date of award.

E12 - SUPPLIES (Cont'd)

DLA600-81-D-0445

NOTES: (Cont'd)

3. The Small Business, Labor Surplus Area and Disadvantaged Business Concerns Subcontracting Program Clauses in this contract will be administered by the cognizant Defense Contract Administration Services Region cited below:

DCASR DALLAS
ATTN: SMALL BUSINESS SPECIALIST
Merchandise Mart Bldg.
500 South Ervay Street
Dallas, TX 75201

4. The amount included in price per gallon for JP-5 ordered with Fuel System Icing Inhibitor (FSII) is $.0062. Item 0101 shall be decreased by $.0062 per gallon for product ordered without FSII.

5. The amount included in price per gallon for JP-4 ordered with Fuel System Icing Inhibitor (FSII) is $.0040. Item 0201 shall be decreased by $.0040 per gallon for product ordered without FSII.

6. Unless the parties otherwise agree, the maximum/minimum quantities available for individual deliveries shall be as shown below:

| ITEM | SHIPPING POINT | PRODUCT | MOD | MAXIMUM (BBLS) | MINIMUM (BBLS) |
|---|---|---|---|---|---|
| 0101 | Port Arthur, TX | JP-5 | TK | 200,000 | 130,000 |
| 0201 | Port Arthur, TX | JP-4 | TK | 135,000 | 75,000 |

7. Notwithstanding Amend 0003 to the solicitation under Clause H1.09, DETERMINATION OF QUANTITY, the 1980 American Edition of Table 6B of the ASTM-IP-API Petroleum Measurement Tables (ASTM Designation D-1250) will be used.

8. Under Clause H52, TANKER DEMURRAGE AND LOADING CONDITIONS, paragraph (e)(ii)(4) is deleted and the following substituted in lieu thereof:

"If for any reason the Contractor is delayed in loading the tanker, or there is a delay in releasing the tanker for sailing, because of action of the Inspector, the ship's Master or her crew that arises through no fault of the Contractor, such basic allowed laytime shall be increased by the duration of such delay."

As a result of the above change: DFSC Clause H52 has been renumbered H52.100 with a date of 1981 MAR.

9. Reference is made to Clause L171, SUBCONTRACTING PLAN FOR SMALL BUSINESS AND SMALL DISADVANTAGED BUSINESS CONCERNS (1980 AUG). The negotiated subcontracting plan and supplemental as submitted by Gulf dated 2 and 24 Mar 81 is incorporated and made a material part of the contract. (See Attachment A)

10. The correct clause number for the clause entitled "Minimum Quantity" which is cited in clauses L31.200, LIMITATION OF PRICE AND CONTRACTOR OBLIGATIONS, and L81.05, INDEFINITE QUANTITY: SCOPE OF CONTRACT, is L81.07 in lieu of as indicated.

H1.08.200 DELIVERIES AND CONTRACT PERIOD (DFSC 1980 APR)

(a) The period of this contract during which the Ordering Officer may order pursuant to the clause entitled: INDEFINITE QUANTITY: SCOPE OF CONTRACT is from date of award through the following periods, as applicable:

| | | |
|---|---|---|
| First Program Year | - | 31 Mar 1982 |
| Second Program Year | - | 31 Mar 1983 |
| Third Program Year | - | 31 Mar 1984 |
| Fourth Program Year | - | 31 Mar 1985 |
| Fifth Program Year | - | 31 Mar 1986 |

(b) Notwithstanding paragraph (a) above, except at its option, Contractor shall not be required to make delivery hereunder prior to: 01 April 1981.

(c) In so far as practicable, the Government will attempt to lift in approximately equal monthly quantities throughout each applicable program year. The following applies to suppliers which offered product over the period 01 Apr 1981 through the applicable period indicated in (a) above:

(i) When the Government calls for delivery on a daily basis, the supplier shall not be required, except at its option, to make deliveries of any grade of product at a daily rate which is in excess of the contract quantity for each applicable program year of such grade of product for delivery at or shipment from each designated refinery or bulk plant location, divided by 335 days: or

(ii) When the Government calls for delivery on other than a daily basis, the contractor shall not be required to accumulate, except at its option, any such product at any such location and to subsequently make deliveries in excess of 9.09% in any one month, of the contract quantity for each applicable program year of the applicable grade of product. However, where the supplier offered a greater quantity for individual tanker loading, the supplier will deliver that greater quantity if the Government has so controlled its orders in past month or months as to permit an accumulation of the greater quantity. The supplier will be required to deliver in excess of 9.09% per month of the applicable program year's quantity if the delivery is to be made F.O.B. tanker at origin and no other quantities have been ordered for delivery during the applicable month and the 30,000 bbls., minimum under paragraph (d) below is greater than such 9.09% quantity.

(d) Except at its option, the Contractor shall not be required to deliver F.O.B. tanker at origin in any one delivery a quantity of product(s) which is less than 30,000 bbls. except, when on the last delivery, the quantity available pursuant to the Clause entitled INDEFINITE QUANTITY; SCOPE OF CONTRACT, is less than 30,000 barrels.

The above Clause H1.08.200 supersedes that which appears on page 114 of the solicitation portion of the award document.

E19.09-1 UPWARD CEILINGS ON ECONOMIC PRICE ADJUSTMENT (DFSC 1981 FEB) DLA600-81-D-0445

(a) As used throughout this clause, the term "base price" will mean:

(1) During the first program year, the original contract price.

(2) During any subsequent program year, either the effective contract price as of the start of the subsequent program year or the price agreed upon, as of the start of the subsequent program year, pursuant to the Price Review provisions of the contract.

(b) The Contractor agrees that the total increase in any contract line item unit price, pursuant to the Economic Price Adjustment provisions of this contract, shall not exceed 50 percent of the base price in any applicable program year, except as provided hereafter.

(1) If, at any time the contractor has reason to believe that within the near future, a price adjustment under the Economic Price Adjustment Provisions of this contract will result in an adjusted unit price which exceeds the current ceiling price for the applicable item(s), he shall promptly notify the Contracting Officer of the expected increase. The notification shall include the Contractor's proposal of a revised ceiling which he believes is sufficient to permit contract completion. The proposal shall include the appropriate explanation(s) and/or documentation. Both parties shall promptly attempt to reach agreement on a new ceiling.

(2) If, in the absence of agreement on a new ceiling, the Contractor experiences a price increase which results in an adjusted unit price above the current ceiling, he shall promptly notify the Contracting Officer. Absent a new ceiling and as long as the applicable unit price(s) exceed the current ceiling, the Contractor is not obligated to fill either pending or future orders for the applicable line items, as of the effective date of the price increase. If, however, notwithstanding the lack of agreement on a new ceiling, the Contracting Officer indicates in writing that the Government is prepared to purchase the line items in question for the price(s) as adjusted beyond the current ceiling, the Contractor shall continue to honor such orders.

E19.12 ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

The Contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increase in the published or posted prices referenced in the Contractor's bid or proposal.

PART A

As used throughout this Section:

(a) The term "listed items" means the items of Section E of the Schedule that are listed in the Reference Price Tabulation of Part C of this Section and are the only items to which escalation shall apply, unless otherwise provided in the contract schedule.

(b) The term "base price" means the unit price set forth opposite the item in Section E of the Schedule.

(c) The term "reference price" means the price set forth in this Section with which the base price is to fluctuate.

(d) The term "date of delivery" means

(i) the date and time vessel begins to load where contract calls for delivery at origin into tanker or barge;

(ii) the date and time vessel begins to discharge where contract calls for delivery at destination by tanker or barge;

(iii) the date and time product commences to move past the specified f.o.b. point where contract calls for delivery into storage by pipeline;

(iv) the date product is received for all methods of delivery other than (i), (ii), and (iii) above.

PART B

(a) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron Station, Alexandria, Va., 22314 of any change in the reference price by telegram dated (preferably confirmed promptly by letter), registered letter mailed, or unregistered letter received, within fourteen (14) days from the date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in reference price, such increase shall apply only to deliveries made on and after the date of receipt by the Contracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in the reference price, such decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) The Contracting Officer will issue a Change Order to this contract to reflect any change pursuant to this Section.

(b) Notwithstanding any provision of this Section to the contrary, the prices payable under this contract shall in no event exceed any of the following:

(i) the maximum prices shown in column VII, of the Reference Price Tabulation,

or

(ii) the Contractor's legal prices under the Federal Energy Administration's Mandatory Petroleum Price Regulations, if applicable.

(c) In the event the reference price product is not subject to Department of Energy price control, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions:

(ii) During the term of this contract, substantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iii) During the term of this contract, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sale of the reference price product to non-government customers except where constrained by contract.

(d) In the event the reference price product is subject to Department of Energy price controls, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions.

(ii) The reference price is a price posted by Contractor for a product which, as of the contract award date, is subject to Mandatory Price and Allocation controls under regulations issued by the Department of Energy (DOE) (10 Code of Federal Regulations, Parts 210, 211, 212).

(iii) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, sustantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iv) Any change in the reference price furnished for the purpose of economic price adjustment hereunder will not exceed contractor's maximum allowable price for the reference price product under DOE Mandatory Petroleum Price Regulation.

(v) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sales by the reference price product to non-government customers except where constrained by contract.

(e) In connection with the warranties in (c) and (d) above, Contractor agrees that the Contracting Officer or his designated representative, who are employees of the U.S. Government, shall have the right to examine books, records, documents, and other data of the Contractor as may be required to verify Contractor's compliance.

(f) The Contractor shall have the right to appeal under the Clause entitled "Disputes" from any determination made by the Contracting Officer under this Clause.

(g) No change in contract price shall be processed under this clause until verification of posting change has been received by the Contracting Officer.

(h) In the event the reference price is discontinued, or its method of calculation is altered substantially, the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described herein. This contract shall be amended to reflect such substitute reference price, effective on the date prior reference price is discontinued or altered. In the event the parties fail to agree on an appropriate substitute, the matter shall be resolved in accordance with the Disputes clause of the contract.

(i) Notwithstanding any other provision of the clause, no upward adjustment shall apply to supplies which are required to be delivered prior to the effective date of the adjustment unless the Contractor's failure to deliver in accordance with the delivery schedule arises from causes beyond the control and without the fault or negligence of the Contractor within the meaning of the clause of this contract entitled "Default", in which case the contract shall be amended to make an equitable extension of the delivery schedule.

PART C

(a) The prices payable under this contract for listed items shall be the base price for the listed item increased or decreased by the amount, determined according to the formula in paragraph (b) below, that the reference price for the listed item shall have been increased or decreased to and including the date of delivery.

(b) The amount of increase or decrease in the base price shall be
(check appropriate box and complete applicable blanks)

[x] the same number of cents, or fractions thereof, that the reference price increases or decreases per like unit of measure.

[ ] the number of cents, or fractions thereof, determined by the ratio of $__________ per gallon for each $________ per barrel that the reference price increases or decreases.

[ ] the number of cents, or fractions thereof, at the rate of $_____________ per gallon for each full $__________ per barrel that the reference price increases or decreases.

(c) The reference price with which the base price for the item is to fluctuate and which is more fully defined in the tabulation to follow) is
(check appropriate box and complete applicable blanks)

[ ] price posted by

[x] the average of the prices posted by

E19.12 (Cont'd) DLA600-81-D-0445

(name of company) GULF OIL CO (name of company)

(name of company) (name of company)

(name of company) (name of company)

(The name of the company or companies posting the reference price shall be identified in Column II of the following tabulation by the number appearing opposite the name of the company(s)).

| I ITEM NO. (LISTED ITEMS) | II NAME OF COMPANY(S) | III COMPANY NAME OF PRODUCT | IV LOCATION WHERE POSTED PRICE IS APPLICABLE | V METHOD OF DELIVERY APPLICABLE TO THE POSTED PRICE | VI POSTED PRICE PAY AS OF See Below* | VII MAXIMUM PRICE PAYABLE UNDER CONTRACT ** |
|---|---|---|---|---|---|---|
| 0101 | Gulf Oil Co. - U.S. | Gulf's major Airport Jet Fuel prices Airline Accounts Sched. | Gulf Head-quarters Houston, TX | F.O.B. Airport Terminal | 1.0910+ 3/11/81 | See Clause E19.09-1 |
| 0201 | Gulf Oil Co. - U.S. | Gulf's major Airport Jet Fuel Prices as above | Gulf Head-quarters Houston, TX | F.O. B. Airport Terminal | 1.0910 x 50%+ 3/11/81 | See Clause E19.09-1 |
| | | Gulf's Good Gulf Gaso. Dealer Tank wagon Post-ing Houston, TX | Gulf Mkt. Houston District Houston, TX | F.O.B. Truck Delivery Rack | 1.1020 x 50%+ 3/2 0/81 ——— 1.0965++ | |

+AVERAGE OF THE POSTED PRICE

*EXCLUDES ALL TAXES
**INCLUDING ANY TAX INCLUDED IN THE BASE PRICE

++THE REFERENCE PRICE FOR ITEM 0201 IS 50% OF GULF'S GOOD GULF GASOLINE DEALER TANK WAGON PRICE POSTED AT HOUSTON, TX PLUS 50% OF THE AVERAGE OF GULF'S MAJOR AIRPORT JET FUEL PRICES-AIRLINE ACCOUNTS POSTED PRICE AT HOUSTON, TX.

DLA600-81-D-0445

I14.200 INSPECTION AND ACCEPTANCE (DFSC 1979 NOV)

On deliveries F.O.B. origin, acceptance of the supplies furnished hereunder will take place at origin notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. On deliveries F.O.B. destination, acceptance of the supplies furnished hereunder will take place at destination notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. The office responsible for inspection, in behalf of the Government, shall be as follows:

| ITEM(S) | SOURCE OF PRODUCT AND/OR SHIPPING POINT | INSPECTOR(S) |
|---|---|---|
| 0101<br>0201 | GULF OIL CORP.<br>PORT ARTHUR REFINERY<br>PORT ARTHUR, TX 77640 | DCASMA SAN ANTONIO<br>615 EAST HOUSTON ST<br>P.O. BOX 1040, MAIN POST OFFICE<br>SAN ANTONIO, TX 78294 |

STANDARD FORM 26, JULY 1966
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41CFR) 1-16.101

# AWARD/CONTRACT

PAGE 1 OF 9

1. CONTRACT (Proc. Inst. Ident.) NO. DLA600-81-D-3037
2. EFFECTIVE DATE 81 OCT 09
3. REQUISITION/PURCHASE REQUEST/PROJECT NO. SEE RFP FILE CONSOLIDATED PRS
4. CERTIFIED FOR NATIONAL DEFENSE UNDER BSDA REG. 2 AND/OR DMS REG. 1. RATING

5. ISSUED BY CODE SC0600
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION TWX 710-832-0600
ALEXANDRIA, VIRGINIA 22314
BUYER/SYMBOL- John P. Plott/DFSC-PD
PHONE (202) 274-7453 2.1b 2.2b

6. ADMINISTERED BY (If other than block 5) CODE
PRE-AWARD SURVEY - NONE

7. DELIVERY
☐ FOB DESTINATION
☒ OTHER (See below) SEE SCHEDULE

8. CONTRACTOR CODE 46935 FACILITY CODE
NAME AND ADDRESS (Street, city, county, State, and ZIP code)
Phillips Petroleum Company
ATTN: E. Beisser
758 Adams Bldg.
Bartlesville, OK 74004

9. DISCOUNT FOR PROMPT PAYMENT
NET 30 DAYS

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO ADDRESS SHOWN IN BLOCK
SEE BLOCK 12

11. SHIP TO/MARK FOR CODE

12. PAYMENT WILL BE MADE BY CODE SA4900
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION, BUILDING 5
ATTN: DFSC-CDX
ALEXANDRIA, VA 22314

13. THIS PROCUREMENT WAS ☐ ADVERTISED, ☒ NEGOTIATED, PURSUANT TO: ☒ 10 U.S.C. 2304 (a)(10) ☐ 41 U.S.C. 252 (c)( )

14. ACCOUNTING AND APPROPRIATION DATA
SEE CLAUSE L150

| 15. ITEM NO | 16. SUPPLIES/SERVICES | 17. QUANTITY | 18. UNIT | 19. UNIT PRICE | 20. AMOUNT |
|---|---|---|---|---|---|
| | (a) This document confirms and incorporates by reference the wire Notice of Award dated 09 OCTOBER 1981. | | | | |
| | (b) A copy of Clause E12.01 (Contract Schedule) and various other clauses agreed to by the parties are attached hereto for informational purposes. Solicitation RFP DLA600-81-R-0161 dated 81 April 03 and Amendments 0001 through 0010 are incorporated by reference except for the following clauses which are deleted: E19.04, E19.14, L94, L97, L176, L176.01 and L176.03. | | | | |

21. ESTIMATED TOTAL AMOUNT OF CONTRACT $ 72,404,498.40

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 26 AS APPLICABLE

22. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 2 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

26. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ________ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

23. NAME OF CONTRACTOR PHILLIPS PETROLEUM COMPANY
BY [signature] (Signature of person authorized to sign)

27. UNITED STATES OF AMERICA
BY [signature: Marie G. Pagan] (Signature of Contracting Officer)

24. NAME AND TITLE OF SIGNER (Type or print)
E. J. Beisser, Manager
Aviation Sales

25. DATE SIGNED 11/9/81

28. NAME OF CONTRACTING OFFICER (Type or print)
MARIE G. PAGAN

29. DATE SIGNED 1981

61



U.S. GOVERNMENT PRINTING OFFICE : 1966 O—255-148

DLA600-81-D-3037

SCHEDULE

E12.01 SUPPLIES TO BE FURNISHED (DFSC 1981 JUL)

(A) The supplies to be furnished hereunder, F.O.B. delivery points, methods of delivery and estimated quantities are as follows:

(B) Prices indicated hereunder are subject to the economic price adjustment provisions of clause E19.12.

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE |
|---|---|---|---|
| | DFSC | JP-4 | NSN 9130-00-256-8613 |
| 0101 | 20,160,000 | P | $1.052300 w/o FSII |
| Origin delivery of 20,160,000 gallons at Woods Cross, UT. | | | |
| 0201 | 6,820,000 | TT | $1.028000 w/FSII |
| Origin delivery of 6,820,000 gallons at Great Falls, MT. | | | |
| 0301 | 30,660,000 | P | $ .991700 w/o FSII |
| Origin delivery of 30,660,000 gallons at Kansas City, KS. | | | |
| | DFSC | AVGAS 100/130 | NSN 9130-00-179-1122 |
| 0401 | 800,000 | TT | $1.280000 |
| Origin delivery of 800,000 gallons at Borger, TX. | | | |
| 0501 | 275,000 | TT | $1.290000 |
| Origin delivery of 275,000 gallons at Albuquerque, NM. | | | |
| 0601 | 110,000 | TT | $1.292000 |
| Origin delivery of 110,000 gallons at Denver, CO. | | | |
| 0701 | 23,000 | TT | $1.286000 |
| Origin delivery of 23,000 gallons at Kansas City, KS. | | | |
| 0801 | 916,000 | TT | $1.29400 |
| Origin delivery of 916,000 gallons at E. Chicago, IN. | | | |
| 0901 | 2,205,000 | TT | $1.290000 |
| Origin delivery of 2,205,000 gallons at Clermont, IN. | | | |
| 1001 | 6,401,130 | TK | $1.280000 |
| Origin delivery of 6,401,130 gallons at Freeport, TX. | | | |

NOTES: a. Contractor will provide deballasting at Freeport, TX not to exceed 14,000 barrels.

b. Contractor does not have bunker fuel at Freeport, TX.

c. Contractor shall have the right to delete any undelivered balance at Great Falls, MT, and add this balance to the volume at Kansas City, KS without penalty at any time upon 60 days prior written notice to the Contracting Officer at the prevailing contract price for item 0301.

d. Unless the parties agree otherwise, the maximum/minimum quantities available for individual deliveries shall be as follows:

| ITEM | PRODUCT | MOD | MAXIMUM (BBLS) | MINIMUM (BBLS) |
|---|---|---|---|---|
| 0101 | JP-4 | P | 22,000 | 10,000 |
| 0301 | JP-4 | P | 30,000 | 25,000 |
| 1001 | AVGAS 100/130 | TK | 42,000 | 20,000 |

e. Payments shall be de to the address shown on the ices.

ADDITIONAL NOTES:

f. Clause H1.08, DELIVERIES AND CONTRACT PERIOD, is modified to reflect a monthly pro-rata of 50 percent for a total quantity of 17,000 gallons for item number 0301 for Oct and Nov 81. The ordering period for this quantity is date of award through 30 Nov 81. The remaining quantity for item 0301 remains at a monthly pro-rata of 8.33 percent with the ordering period being date of award through 30 Sep 82.

E19.09 UPWARD CEILINGS ON ECONOMIC PRICE ADJUSTMENT/PRICE ESCALATION (DFSC 1979 MAR)

Contractor agrees that the total increase in any unit price pursuant to the Economic Price Adjustment/Price Escalation provision of this contract shall not exceed 50 percent of the original base price for individual contract items, except in the situations provided hereafter.

1. If at any time the contractor has reason to believe that within the near future a price adjustment will be required under the Economic Price Adjustment/Price Escalation provision of this contract and that the resultant adjustment when added to the latest contract price for the item(s) in question will exceed the current contract ceiling price for the item(s), the contractor shall notify the Contracting Officer of the expected increase. At the same time, the contractor shall propose a revised ceiling which it believes to be sufficient to permit completion of remaining contract performance. Contractor's proposal shall be supported by appropriate explanations and documentation. The parties agree to promptly undertake negotiations regarding the proposed new ceiling.

2. If, in the absence of an agreement on a new ceiling, notice is given by the contractor of an actual price change which results in a unit price for contract item(s) which exceeds the current ceiling, the contractor will have no further obligation under this contract to fill pending or future orders for the specific line item(s) in question as of the effective date of the increase, as long as the unit price exceeds the ceiling. If, however, notwithstanding the lack of agreement on a new ceiling, the Contracting Officer indicates in writing that the Government is prepared to purchase the line item(s) for the price as adjusted under the Economic Price Adjustment/Price Escalation provisions beyond the current ceiling, the contractor will be obligated to continue to honor orders placed for the specific line item in question.

E19.12 ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

The Contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increase in the published or posted prices referenced in the Contractor's bid or proposal.

PART A

As used throughout this Section:

(a) The term "listed items" means the items of Section E of the Schedule that are listed in the Reference Price Tabulation of Part C of this Section and are the only items to which escalation shall apply, unless otherwise provided in the contract schedule.

(b) The term "base price" means the unit price set forth opposite the item in Section E of the Schedule.

(c) The term "reference price" means the price set forth in this Section with which the base price is to fluctuate.

(d) The term "date of delivery" means

(i) the date and time vessel begins to load where contract calls for delivery at origin into tanker or barge;

(ii) the date and time vessel begins to discharge where contract calls for delivery at destination by tanker or barge;

(iii) the date and time product commences to move past the specified f.o.b. point where contract calls for delivery into storage by pipeline;

(iv) the date product is received for all methods of delivery other than (i), (ii), and (iii) above.

PART B

(a) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron Station, Alexandria, Va., 22314 of any change in the reference price by telegram dated (preferably confirmed promptly by letter), registered letter mailed, or unregistered letter received, within fourteen (14) days from the date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in reference price, such increase shall apply only to deliveries made on and after the date of receipt by the Contracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in the reference price, such decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) The Contracting Officer will issue a Change Order to this contract to reflect any change pursuant to this Section.

(b) Notwithstanding any provision of this Section to the contrary, the prices payable under this contract shall in no event exceed any of the following:

(i) the maximum prices shown in column VII of the Reference Price Tabulation,

or

(ii) the Contractor's legal prices under the Federal Energy Administration's Mandatory Petroleum Price Regulations, if applicable.

(c) In the event the reference price product is not subject to Department of Energy price control, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions:

(ii) During the term of this contract, substantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iii) During the term of this contract, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sale of the reference price product to non-government customers except where constrained by contract.

(d) In the event the reference price product is subject to Department of Energy price controls, Contractor warrants as follows:

E19.12 (Cont'd)

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions.

(ii) The reference price is a price posted by Contractor for a product which, as of the contract award date, is subject to Mandatory Price and Allocation controls under regulations issued by the Department of Energy (DOE) (10 Code of Federal Regulations, Parts 210, 211, 212).

(iii) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, sustantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iv) Any change in the reference price furnished for the purpose of economic price adjustment hereunder will not exceed contractor's maximum allowable price for the reference price product under DOE Mandatory Petroleum Price Regulation.

(v) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sales by the reference price product to non-government customers except where constrained by contract.

(e) In connection with the warranties in (c) and (d) above, Contractor agrees that the Contracting Officer or his designated representative, who are employees of the U.S. Government, shall have the right to examine books, records, documents, and other data of the Contractor as may be required to verify Contractor's compliance.

(f) The Contractor shall have the right to appeal under the Clause entitled "Disputes" from any determination made by the Contracting Officer under this Clause.

(g) No change in contract price shall be processed under this clause until verification of posting change has been received by the Contracting Officer.

(h) In the event the reference price is discontinued, or its method of calculation is altered substantially, the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described herein. This contract shall be amended to reflect such substitute reference price, effective on the date prior reference price is discontinued or altered. In the event the parties fail to agree on an appropriate substitute, the matter shall be resolved in accordance with the Disputes clause of the contract.

(i) Notwithstanding any other provision of the clause, no upward adjustment shall apply to supplies which are required to be delivered prior to the effective date of the adjustment unless the Contractor's failure to deliver in accordance with the delivery schedule arises from causes beyond the control and without the fault or negligence of the Contractor within the meaning of the clause of this contract entitled "Default", in which case the contract shall be amended to make an equitable extension of the delivery schedule.

PART C

(a) The prices payable under this contract for listed items shall be the base price for the listed item increased or decreased by the amount, determined according to the formula in paragraph (b) below, that the reference price for the listed item shall have been increased or decreased to and including the date of delivery.

(b) The amount of increase or decrease in the base price shall be
(check appropriate box and complete applicable blanks)

[X] the same number of cents, or fractions thereof, that the reference price increases or decreases per like unit of measure.

[ ] the number of cents, or fractions thereof, determined by the ratio of $_________ per gallon for each $_______ per barrel that the reference price increases or decreases.

[ ] the number of cents, or fractions thereof, at the rate of $___________ per gallon for each full $_________ per barrel that the reference price increases or decreases.

E19.12 (Cont'd)

(c) The reference price with which the base price for the item is to fluctuate and which is more fully defined in the tabulation to follow) is

(check appropriate box and complete applicable blanks)

[ ] price posted by | [X] the average of the prices posted by

_______________ (name of company) | Phillips Petroleum Co. (name of company)

_______________ (name of company) | _______________ (name of company)

_______________ (name of company) | _______________ (name of company)

(The name of the company or companies posting the reference price shall be identified in Colmumn II of the following tabulation by the number appearing opposite the name of the company(s)).

| I ITEM NO. (LISTED ITEMS) | II NAME OF COMPANY(S) | III COMPANY NAME OF PRODUCT | IV LOCATION WHERE POSTED PRICE IS APPLICABLE | V METHOD OF DELIVERY APPLICABLE TO THE POSTED PRICE | VI POSTED PRICE PAY AS OF 1 OCT 81 * | VII MAXIMUM PRICE PAYABLE UNDER CONTRACT ** |
|---|---|---|---|---|---|---|
| JP-4 | | | | | | |
| 0101 | Phillips Petroleum Postings | Housebrand Unleaded Dual Purpose | Woods Cross, Utah | P | $1.05983 | Per E19.09 |
| 0201 | Phillips Petroleum Postings | Housebrand Unleaded Dual Purpose | Great Falls, Montana | T | $1.043000 | Per E19.09 |
| 0301 | Phillips Petroleum Postings | Housebrand Unleaded Dual Purpose | Kansas City, Kansas | P | $1.019170 | Per E19.09 |
| AVGAS 100/130 | | | | | | |
| 0401 | Phillips Petroleum Postings | AVGAS 100LL | Borger, Texas | T | $1.280000 | Per E19.09 |
| 0501 | Phillips Petroleum | AVGAS 100LL | Albuquerque, New Mexico | T | $1.290000 | Per E19.09 |
| 0601 | Phillips Petroleum Postings | AVGAS 100LL | Denver, Colorado | T | $1.292000 | Per E19.09 |
| 0701 | Phillips Petroleum Postings | AVGAS 100LL | Kansas City, Kansas | T | $1.286000 | Per E19.09 |

DLA600-81-D-3037

E19.12 (Cont'd)

| I ITEM NO. (LISTED ITEMS) | II NAME OF COMPANY(S) | III COMPANY NAME OF PRODUCT | IV LOCATION WHERE POSTED PRICE IS APPLICABLE | V METHOD OF DELIVERY APPLICABLE TO THE POSTED PRICE | VI POSTED PRICE PAY AS OF 01 OCT 81* | VII MAXIMUM PRICE PAYABLE UNDER CONTRACT ** |
|---|---|---|---|---|---|---|
| AVGAS 100/130 CONTINUED | | | | | | |
| 0801 | Phillips Petroleum Postings | AVGAS 100OLL | E. Chicgo, Indiana | T | $1.294000 | Per E19.09, |
| 0901 | Phillips Petroleum Postings | AVGAS 100LL | Clermont, Indiana | T | $1.29000 | Per E19.09 |
| 1001 | Phillips Petroleum Postings | AVGAS 100LL | Freeport, Texas | TK | $1.280000 | Per E19.09 |

Prices fro AVGAS 100/130 will change cent for cent with changes in Phillips' AVGAS 100LL postings for the respective locations. The base references for items 0101 through 0301 are calculated using an average of 33 1/3 percent of each of these Phillips' postings - Housebrand Gasoline, Unleaded Gasoline & Dual Purpose Fuel Oil - at the respective locations. The postings in effect on the 1st day of the month determine the price for the 1st through the 15th and the postings in effect on the 16th day of the month determine the price for the 16th through the remainder of the month.

*EXCLUDES ALL TAXES
**INCLUDING ANY TAX INCLUDED IN THE BASE PRICE

I14.02 INSPECTION AND ACCEPTANCE (DFSC 1979 NOV)

On deliveries F.O.B. origin, acceptance of the supplies furnished hereunder will take place at origin notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. On deliveries F.O.B. destination, acceptance of the supplies furnished hereunder will take place at destination notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. The office responsible for inspection, in behalf of the Government, shall be as follows:

| ITEM(S) | SOURCE OF PRODUCT AND/OR SHIPPING POINT | INSPECTOR(S) |
|---|---|---|
| 0101 | Phillips Petroleum Company<br>3935-800 W. Woods<br>Woods Cross, Davis County<br>Utah 84087 | DCASMA Denver<br>701 W. Hampden Avenue<br>(Suite E-3210)<br>Englewood, CO 80154 |
| 0201 | Phillips Petroleum Company<br>Box 1239 Smelters Ave & 10 St<br>Great Falls, Cascade County,<br>Montana 59401 | DCASMA Seattle<br>Bldg. 5D Naval Support Activity<br>7500 Sand Point Way NE<br>Seattle, WA 98115 |
| 0301<br>0701 | Phillips Petroleum Company<br>209 Fairfax Rd, Zone 15<br>Wyandotte County<br>Kansas City, Kansas 66115 | DCASMA St. Louis<br>1136 Washington Ave.<br>St. Louis, MO 63101 |
| 0401 | Phillips Petroleum Company<br>Borger Refinery, North End of<br>Texas Road West of Hwy. 119<br>Box 271, Hutchinson County<br>Borger, Texas 79007 | DCASMA Dallas<br>Merchandise Mart Bldg.<br>500 S. Ervay St.<br>Dallas, TX 75201 |
| 0501 | Phillips Petroleum Company<br>6 Miles South of Central Ave.<br>on Hwy. 47, P.O. Box 908<br>Bernalillo County<br>Albuquerque, NM 87103 | DCASMA Phoenix<br>3800 N. Central Avenue<br>Phoenix, AZ 85012 |
| 0601 | Phillips Petroleum Company<br>Denver Terminal<br>56th St. & Colorado Blvd.<br>P.O. Box 68, Arapahoe County<br>Commerce City, Colorado 80022 | DCASMA Denver<br>701 W. Hampden Avenue<br>(Suite E-3210)<br>Englewood, CO 80154 |
| 0801 | Phillips Pipe Line Company<br>400 E. Columbus Drive<br>Lake County<br>E. Chicago, Indiana 46312 | DCASMA Chicago<br>O'Hare International Airport<br>P.O. Box 66911<br>Chicago, IL 60666 |
| 0901 | Phillips Petroleum Company<br>Box 34176, Marion County<br>Clermont, Indiana 46234 | DCASMA Indianapolis<br>Building 1 Finance Ctr USA<br>Fort Benjamin Harrison,<br>IN 46249 |
| 1001 | Phillips Petroleum Company<br>Sweeney Refinery & Petro-<br>Chemical Complex<br>Hwy 24 P.O. Box 866<br>Sweeney, TX 77480 | DCASMA San Antonio<br>615 E. Houston St.<br>P.O. Box 1040<br>San Antonio, TX 78294 |

CONOCO

Conoco Inc.
P.O. Box 2197
Houston, TX 77252

December 18, 1986

General Griffith
Defense Fuel Supply Center
Cameron Station
Alexandria, VA 22304-6160

Dear General Griffith,

This letter is in regard to the method used to determine the bid award for JP-4. It is Conoco's opinion that a new method using current, readily available, published information should be substituted for the present calculation. This change would give bidders and the government the opportunity to make a more realistic evaluation.

Conoco has no complaint with the way the PMM is calculated and used but with the timing of its availability. A major flaw in the process is the PMM Journal lags three months from the designated month, thus the suppliers must guess the reference price prior to bidding. Due to the fact that there are numerous terminals used in the reference price calculation, it is difficult to forecast the PMM using information available within Conoco or the industry. Since the reference price is based on a single month's market activity, there is no way of predicting with certainty what the actual reference number will be. This makes bidding JP-4 a real "gamble". Even in a public auction, a minimum bid is given from which to start the bidding process.

Furthermore, prior to the final bid, the government sends each bidder a target price. This year's inland target price was 36 cents/gallon. The actual June PMM Reference Price was 50.69 cents/gallon or 14.69 cents/gallon higher. Hence, there is no logical correlation between target price and PMM price.

Based on the large discrepancy seen in the last bid cycle, a new JP-4 price calculation is needed. Changing the bid process to one that uses readily available information takes away the uncertainty from both the bidder and the government. This protects both parties from losing money due to the actual reference price being higher or lower than projected.

We realize how difficult it is to determine an index that represents all of the activity in a particular PAD. By changing the current calculation to one that utilizes readily available information this would enable all of those involved to make viable decisions about what the "real" value is for JP-4.

Please let me know your thoughts on this matter. I will be looking forward to hearing from you.

Franklin P. Perez
Manager,
Administration & Supply
Specialty Products Division
Wholesale Marketing

cc: Gordon Regan, Jr., Houston
Dennis Neff, Houston
Toby Casteel, Houston
Paul Madison, Houston
Chuck Minard, Houston
Sally Anderson, Houston
Don Unruh, Houston
Bill Cayan, Houston

scau